**Statement of Facts**

On September 23, 2011, a cooperating witness with a pending case, acting as a confidential human source (CHS), provided information on an individual named "Jorge". CHS indicated he/she met "Jorge" online approximately 1 ½ to 2 years ago and has had a continual relationship online and via telephone with "Jorge," who he/she also has met in person a few times. CHS physically described "Jorge" as a male Hispanic, approximately 48-52 years old, approximately 5'7" – 5'8" tall, thin and wears glasses, and indicated that "Jorge" works as a nurse and lives in the area of Richmond, California. CHS advised that the conversations with "Jorge" surrounded their mutual interest in child pornography. "Jorge" also claimed to have had sexual contact with a 10-12 year-old boy in Mexico. CHS has met "Jorge" in person and has copied a collection of child pornography from "Jorge". The collection of child pornography consists of around 500 hard core images and videos of mainly toddler-aged children. Based on the information CHS provided, as well as subsequent investigation by law enforcement, "Jorge" was identified to be Jorge RODRIGUEZ, age 44, living in Point Richmond, California.

On September 29, 2011, CHS was shown a picture of RODRIGUEZ and stated that the person depicted could be the same person as "Jorge" before he became sick – after which "Jorge" looked much thinner. The same day, CHS placed a recorded, one-party consent call to RODRIGUEZ. CHS had left his/her last name on the previous day's voicemail, which RODRIGUEZ noted he had not previously known, and provided his last name as RODRIGUEZ. During the call, RODRIGUEZ noted that he was speaking on an iPhone from his residence and asked CHS if he/she is "still enjoying the collection" – referring to the collection of child pornography – "or did you purge it, or what, cause I know I did." CHS and RODRIGUEZ discussed the reason they both purged their collections to be because a mutual friend had been arrested for a similar reason. RODRIGUEZ noted that he purged his collection due to a comment that the mutual friend had made, and stated further, "In retrospect I wish I hadn't gotten rid of it." RODRIGUEZ also referenced a potential new source who would provide him with another collection – one that the new source had told RODRIGUEZ would make RODRIGUEZ's prior collection appear "meager." RODRIGUEZ told the CHS that if the new source "come[s] through, what I'll do is make you a copy." RODRIGUEZ and CHS also discussed the safest way to get CHS a copy. RODRIGUEZ suggested that he could come to Washington, D.C. and visit. CHS inquired about RODRIGUEZ mailing him/her a copy on CD, but RODRIGUEZ responded that "a CD would not hold all the stuff that [the new source] has." RODRIGUEZ suggested that an encrypted hard drive would be better and that "they won't have enough time to check everything" if he brought it to Washington, D.C. on a business trip. RODRIGUEZ also noted that he has not had an internet connection at his residence in about two years, but primarily uses his iPhone for internet access. CHS advised that the "collection", "stuff" and "material" refer to child pornography.

On November 3, 2011, CHS and RODRIGUEZ had a brief conversation to arrange a telephone call for the next day. On November 4, 2011, CHS placed a recorded, one-party consent call to RODRIGUEZ, who advised about the status of the potential new source for a collection and noted that he was unsure whether or not he would see that individual. RODRIGUEZ then mentioned a second potential source for a collection. CHS and RODRIGUEZ also discussed the use of encryption to protect their stuff when more is obtained. RODRIGUEZ noted that law enforcement can tell who is trading stuff online on the internet or on peer to peer networks. RODRIGUEZ again mentioned that he wished he had kept his stuff and that if the first potential source comes and brings some material, "of course I'll take it."

On November 17, 2011, CHS placed a recorded, one-party consent call to RODRIGUEZ, who offered to send any material via Federal Express if he was able to obtain some.  RODRIGUEZ had spoken with the first potential source, but was not sure if he would get to see him.  RODRIGUEZ indicated he would call or text CHS if he was able to meet with the first potential source.

On November 30, 2011, CHS placed a recorded, one-party consent call to RODRIGUEZ, who stated that the first potential source had "flaked" on him and he did not get to meet up with him, therefore he was not able to obtain any material.  RODRIGUEZ mentioned that he had a second potential source as a back-up person for obtaining material.  According to RODRIGUEZ, the second potential source wanted to "wait until the dust settled" following a recent theft in his home before providing RODRIGUEZ any material.  RODRIGUEZ stated he would be giving the source a time frame to provide the material or he would start looking at other options.  RODRIGUEZ indicated he was still willing to mail CHS some material should he be able to obtain some.

On December 10, 2011, RODRIGUEZ texted CHS and said, "Hey.  Give me a call if not tonight, tomorrow.  Need to send you your xmas present."  CHS and RODRIGUEZ texted a few additional times to work out a time to call.

On December 19, 2011, CHS placed a recorded, one-party consent call to RODRIGUEZ, who stated that he got a "copy of the mirror with a lot of good stuff in there that I don't recognize." RODRIGUEZ stated that he got the copy from the second potential source previously referenced and he thinks that source did not copy everything for RODRIGUEZ – although noted that it is "plenty for now." RODRIGUEZ also noted that he had been spending time with this source and believed that, if they become closer, the source will let him copy everything he has.  RODRIGUEZ told CHS, "I could send you a copy of the mirror if you want me to," and discussed possible encryption methods, including one that uses an emailed photograph as the decryption key, a method about which RODRIGUEZ explained many investigators are unaware.  RODRIGUEZ offered to send the hard-drive encrypted and email the photo to CHS.  RODRIGUEZ also stated that he would see if the second potential source would copy the encrypted drive for CHS and send it to him/her directly.  After the phone call, CHS texted RODRIGUEZ his/her email address and a mailing address in Washington, D.C. where the package could be sent.  CHS requested that RODRIGUEZ let him/her know when the package was in the mail so CHS could be on the lookout for it.

On December 22, 2011, CHS texted RODRIGUEZ to inquire if he had received CHS's address ok via text.  RODRIGUEZ responded, "I did thank you.  Am working on the mirror."

On January 3, 2012, CHS texted RODRIGUEZ asking if there was "Any luck with the present." RODRIGUEZ indicated that he had been busy with work, but "the payoff is that I ran into a decorator with advi[c]e how to double the mirror surfaces.  I'll talk to you soon."

On January 11, 2012, CHS placed a recorded, one-party consent call to RODRIGUEZ, who stated he was waiting to send CHS the mirror because he reconnected with a person he knew previously.  This person told RODRIGUEZ about the TOR network, which can be used to store encrypted material, and to redirect IP addresses, making it difficult to determine the person to whom a file belongs.  RODRIGUEZ stated that while using TOR, a person cannot use the same IP address for long periods of time, and suggested breaking up the TOR sessions and moving around to places offering free internet, such as the

library to download or upload files.  RODRIGUEZ also referenced other aspects of using TOR and noted that he would try to access the TOR network to obtain additional material.  RODRIGUEZ also mentioned that the photo encryption software is on the drive he was planning to send to CHS.  According to RODRIGUEZ, the encryption "can be used on a PC because MACs can read PCs".  RODRIGUEZ stated that he "bought a cheap MAC someone sold him for $100."  RODRIGUEZ also stated the computer was an "ibook G4".  RODRIGUEZ attempted to run the TOR network from this computer, but it did not work and he was going to try it again by running it off of an external hard drive.  RODRIGUEZ also referenced a friend who may be able to help him access TOR and indicated that he would try "safe sites" with this person.  RODRIGUEZ also told CHS, "If I'm going to mail you something I want it to be a completely full disc so I wouldn't have to do it again."

On January 12, 2012, CHS texted RODRIGUEZ to see if he had any luck the day before.  RODRIGUEZ responded, "Yesterday was successful.  Am scheduling time Saturday to do all the moving.  Essentially what ever I can do Saturday I'll ship out and update later."

On January 19, 2012, CHS texted RODRIGUEZ to inquire about the "gift" and see if CHS could call the next day.  RODRIGUEZ provided a time frame to call.

On January 26, 2012, CHS placed a recorded, one-party consent call to RODRIGUEZ, who indicated he would have to get a new laptop because he did not want to borrow someone else's computer to make the copy for CHS, since his computer is older and was not working properly.  RODRIGUEZ stated he had his copy, but not CHS's copy.  RODRIGUEZ added a little more to the collection, but not much.  RODRIGUEZ commented that "people are stingy" and "do you expect me to provide everything and get nothing in return, you just show up."  RODRIGUEZ noted that he had recently reconnected with someone he knew approximately three to four years ago who has strong connections in Mexico and may be able to get more stuff.  RODRIGUEZ thinks this person has stuff here already, but would provide it for money.  RODRIGUEZ stated that "once you have the video, it'd be great, once you have a whole copy you can just pass it around."  In reference to the current collection to which RODRIGUEZ had access, RODRIGUEZ told CHS, "I could just mail you what I have and you make a copy and send it back."  RODRIGUEZ said he would get it in the mail the next day, noting that "the one I have is done for a PC, is netted for a PC," and "if you have a PC you will be able to make as many copies as you want."  RODRIGUEZ stated, "the drive is 500GB, but I don't think it's taking up over 200 GB."  CHS inquired if the drive would be encrypted and RODRIGUEZ said it would not be because "if you copy it while encrypted, you may not transfer all."  RODRIGUEZ said he would go to UPS to ship it out, possibly in two packages, one with the hard drive and one with the connector cables.  After the call, CHS texted RODRIGUEZ the address in Washington, D.C. to use to mail CHS the package.  CHS provided his/her email address as well.

On January 30, 2012, CHS texted RODRIGUEZ to see if he had sent out the package.  RODRIGUEZ responded, "It should be traveling today.  I'll send the tracking #."  RODRIGUEZ thereafter provided the tracking number and stated that the package would arrive via next day air.  RODRIGUEZ also texted, "No need to send back since I made back up.  I'll pick up when I get there."  Via several text messages, RODRIGUEZ indicated the package had been shipped via USPS, but told CHS to try the tracking number on UPS because he had used a mailing service and told them to send it however.  RODRIGUEZ also stated, "I'm sure it went because my card was charged."

Upon entering the provided tracking number on the UPS website, the tracking information indicated the package had been mailed from San Rafael, CA on January 30, 2012, and had arrived in Washington, D.C. (incorrectly listed as "Landover, DC" on the UPS website) on January 31, 2012.  The shipping information was listed as being to Washington, D.C.  On February 1, 2012, an FBI Agent picked up the package sent by RODRIGUEZ to a UPS Store in Washington, D.C., which was the same address provided by CHS.  Upon opening the outer packaging, there was a brown package found inside with the name "J. Rodriguez" and RODRIGUEZ's home address in Point Richmond, CA noted as the return address.  A forensic preview of the computer hard-drive found within the brown interior package identified approximately 139 GB of files that were consistent with child pornography.  Specifically, the hard-drive contained more than 2,500 total videos, the majority of which constitutes child pornography.  Included among the video files contained on the hard-drive were the following:  (i) video labeled "!!NEW!!! ANrb-Private (anal fuck 4yr) (SELECTIVE TRADE).mpg", depicting a pre-pubescent child being anally penetrated by an adult penis; (ii) video labeled "!!NEW-MOV01889[10yo(mystery) Boy sucks man real good](03.11).1.MPG", depicting a pre-pubescent male child who was blind-folded and performing oral sex on an adult penis; (iii) video labeled "[boy+man] !!!!!!! 6-7yo boy strip, suck, fucked by man – trazcollection!.MPG", depicting a pre-pubescent male child masturbating his own penis, performing oral sex on an adult penis and being anally penetrated by an adult penis; (iv) video labeled "3yo BOY fucked in the ass by man (2007).avi", depicting a pre-pubescent male child being anally penetrated by an adult penis; and (v) video labeled "5yo sucks dads dick in the shower – spits out cum – pthc gay boy pedo 02.46 (19.6Mb).mpg", depicting a pre-pubescent male child performing oral sex on an adult penis.

On February 1, 2012, CHS texted RODRIGUEZ to inform him that he had received the package and had enjoyed the material.  RODRIGUEZ replied, "Great.  But would you agree it's not an exact copy?" and further, "Btw we need to plan a trip to Mexico DF."  Through additional text messages, CHS and RODRIGUEZ agreed on a time-frame to talk on the telephone.

On February 8, 2012, CHS placed a recorded, one-party consent call to RODRIGUEZ.  CHS thanked RODRIGUEZ for the present and RODRIGUEZ stated there should be more to acquire – along the lines of a terabyte of material.  RODRIGUEZ told CHS that he had been "connecting a lot" with another individual who RODRIGUEZ had referenced in the past.  RODRIGUEZ noted that he had been going to this person's house to "hook up" and that this person had been to RODRIGUEZ's house to look at his collection.  When CHS asked about this person's son – who is now approximately 12 years old – RODRIGUEZ stated that on the last occasion he spent time with this person, there was "a very short play session with minor petting here and there."  RODRIGUEZ noted further, "It was more than I ever expected."  RODRIGUEZ informed that he was not sure when he would see this person again, however, as the person would be going for drug rehabilitation.  RODRIGUEZ also mentioned that this person also gave him "a couple of little drives with stuff" that he had found on the TOR network.  RODRIGUEZ offered to send CHS the material obtained from this person, stating, "It's not a lot, but it's something."  RODRIGUEZ also mentioned that if they were to go to Mexico, they would be on their own, but RODRIGUEZ knows two "bootleg stands" where he believed they could obtain material.  RODRIGUEZ stated that in order to do so, a person would need to make a significant purchase first and then go back again to ask for something "more to your liking."

A subpoena was served to the cell phone provider listed for the telephone number used by RODRIGUEZ, and to which all of the one-party consent calls were placed.  The subpoena result revealed RODRIGUEZ to be the listed subscriber since January 2008, and noted that the phone number was currently active as of January 6, 2012, the date of the subpoena return.  The address provided for RODRIGUEZ on the subpoena return from the cell phone provider was the same as RODRIGUEZ's home address in Point Richmond, CA, which also coincides with the address on RODRIGUEZ's California driver's license, as well as information obtained through database searches.

Based on the foregoing, Your Affiant believes there is probable cause to believe that between on or about January 30, 2012, and February 1, 2012, within the District of Columbia and elsewhere, JORGE RODRIGUEZ transported child pornography, in violation of Title 18, United States Code, Section 2252(a)(1).

_____
JENNY CUTALO-PATTERSON, SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn and subscribed to before me this _____ day of February, 2012

_____
ALAN KAY
United States Magistrate Judge