**FILED**

**NOV 1 6 2012**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| UNITED STATES OF AMERICA, | : | CRIMINAL NO. 12-0074 (RBW) |
|---|---|---|
| v. | : | |
| JORGE RODRIGUEZ, | : | |
| Defendant. | : | |

## STATEMENT OF THE OFFENSE

The parties in this case, the United States of America and the defendant, Jorge Rodriguez, stipulate and agree that the following facts are true and accurate. These facts do not constitute all of the facts known to the parties concerning the charged offense; they are being submitted to demonstrate that sufficient facts exist that the defendant committed the offense to which he is pleading guilty.

1. On September 23, 2011, a cooperating witness with a pending case, acting as a confidential human source (CHS), provided information on an individual named "Jorge" – who was later identified by law enforcement as the defendant, Jorge Rodriguez. CHS indicated he/she met the defendant online approximately 1 ½ to 2 years ago and noted that they have had a continual relationship online and via telephone. CHS advised that the conversations with the defendant surrounded their mutual interest in child pornography, and noted that CHS has met the defendant in person and has copied the defendant's collection of child pornography.

2. Starting on September 29, 2011, and continuing through early February 2012, the defendant and CHS engaged in a series of communications through recorded one-party consent telephone calls and text messages. During the course of these communications, the defendant and CHS discussed their mutual interest in child pornography, including that both had purged prior

collections due to the arrest of a mutual friend who was found in possession of child pornography. During one of the recorded telephone calls, the defendant noted that he had purged his collection, but stated further, "In retrospect I wish I hadn't gotten rid of it." The defendant also referenced a potential new source who would provide him with another collection – one that the new source had told the defendant would make the defendant's prior collection appear "meager." The defendant told the CHS that if the new source "come[s] through, what I'll do is make you a copy."

3. During the communications, the defendant and CHS also discussed the safest way to get CHS a copy, and the defendant offered to send CHS a hard-drive containing the child pornography.

4. During the recorded telephone calls, the defendant repeatedly referenced his efforts to reconstitute his child pornography collection through additional new sources. During one particular call on November 4, 2011, the defendant reiterated that he wished he had kept his original collection and that if one of his potential new sources comes and brings some material, "of course I'll take it."

5. On December 10, 2011, the defendant sent a text message to CHS and said, "Hey. Give me a call if not tonight, tomorrow. Need to send you your xmas present."

6. During a subsequent recorded telephone call on December 19, 2011, the defendant stated that he had obtained a copy of the "mirror" hard-drive with a "lot of good stuff" – relating to the child pornography. The defendant also told CHS, "I could send you a copy of the mirror if you want me to," and discussed possible encryption methods about which he believed many investigators were unaware.

7.    During a recorded telephone call on January 26, 2012, the defendant stated he had his copy of the child pornography collection, but not CHS's copy. According to the defendant, he added a little more to the collection, but not much. The defendant also noted that he had recently reconnected with someone he knew approximately three to four years ago who has strong connections in Mexico and may be able to get more child pornography. The defendant stated that "once you have the video, it'd be great, once you have a whole copy you can just pass it around." The defendant stated further that he would get it in the mail the next day, noting that "the one I have is done for a PC, is netted for a PC," and "if you have a PC you will be able to make as many copies as you want." The defendant added, "[T]he drive is 500GB, but I don't think it's taking up over 200 GB." When CHS inquired if the drive would be encrypted, the defendant responded it would not be, because "if you copy it while encrypted, you may not transfer all." The defendant said he would go to UPS to ship it out, possibly in two packages, one with the hard drive and one with the connector cables. After the call, CHS sent the defendant a text message with the address in Washington, D.C. to use to mail CHS the package.

8.    On January 30, 2012, CHS sent the defendant a text message to see if he had sent out the package – to which the defendant responded, "It should be traveling today. I'll send the tracking #." The defendant thereafter provided the tracking number and stated that the package would arrive via next day air. The defendant also texted, "No need to send back since I made back up. I'll pick up when I get there." The defendant also provided CHS with a tracking number that could be used to track the shipment through UPS.

3

9. Upon entering the provided tracking number on the UPS website, law enforcement learned that the tracking information indicated the package had been mailed from San Rafael, CA on January 30, 2012, and had arrived in Washington, D.C. on January 31, 2012.

10. On February 1, 2012, a law enforcement agent picked up the package sent by the defendant to a location in Washington, D.C., which was the same address provided by CHS. Upon opening the outer packaging, there was a brown package found inside with the name "J. Rodriguez" and the defendant's home address in Point Richmond, CA noted as the return address. Found inside of the inner brown packaging was a Blue Seagate Free Agent GoFlex Hard-Drive (S/N NA037W0H). A forensic analysis of the blue hard-drive identified approximately 139 GB of files that were consistent with child pornography. Specifically, the hard-drive contained more than 2,500 total videos, the majority of which constitutes child pornography. Included among the video files contained on the hard-drive were the following: (i) video labeled "!!NEW!!! ANrb-Private (anal fuck 4yr) (SELECTIVE TRADE).mpg", depicting a pre-pubescent child being anally penetrated by an adult penis; (ii) video labeled "!!NEW-MOV01889[10yo(mystery) Boy sucks man real good](03.11).1.MPG", depicting a pre-pubescent male child who was blind-folded and performing oral sex on an adult penis; (iii) video labeled "[boy+man] !!!!!!! 6-7yo boy strip, suck, fucked by man – trazcollection!.MPG", depicting a pre-pubescent male child masturbating his own penis, performing oral sex on an adult penis and being anally penetrated by an adult penis; (iv) video labeled "3yo BOY fucked in the ass by man (2007).avi", depicting a pre-pubescent male child being anally penetrated by an adult penis; and (v) video labeled "5yo sucks dads dick in the shower – spits out cum – pthc gay boy pedo 02.46 (19.6Mb).mpg", depicting a pre-pubescent male child performing oral sex on an adult penis.

4

11. On February 1, 2012, CHS sent the defendant a text message to inform him that he had received the package and had enjoyed the material. The defendant replied, "Great. But would you agree it's not an exact copy?" and further, "Btw we need to plan a trip to Mexico DF."

12. During a subsequent recorded telephone call on February 8, 2012, CHS thanked the defendant for the present and the defendant stated there should be more to acquire – along the lines of a terabyte of material.

13. On February 24, 2012, law enforcement agents arrested the defendant at his residence in Point Richmond, California, pursuant to a federal arrest warrant issued in Washington, D.C. Simultaneous to the defendant's arrest, and in the time period that followed, law enforcement agents executed a search on the defendant's residence pursuant to a search warrant. During the search, law enforcement recovered, among other items, a Seagate Free Agent GoFlex Hard Drive (S/N NA0ESA1C); a White Apple iBook G4 Computer (Model A1055, No Visible S/N); a Sandisk Cruzer Thumb-Drive (4GB); a DT101 G2 Thumb-Drive (4GB); a Kingston Datatraveler G3 Thumb-Drive (8GB); and an Apple 16GB iPhone Cellular Telephone (Model A1303).

14. Pursuant to the authority of the earlier search warrant, law enforcement conducted a forensic review of the computer and computer media items. Law enforcement also reviewed the contents of the cellular telephone, which was the same device that the defendant had used in his phone call and text message communications with CHS, and which also revealed a contact listing for CHS that provided the same address in Washington, D.C. to which the defendant mailed the blue hard-drive containing child pornography. The forensic analysis of the computer devices and the cellular telephone revealed the presence of numerous images and videos of child pornography, many of which were identical to the videos contained on the Blue Seagate Free Agent GoFlex Hard Drive

(S/N NA037W0H) that the defendant sent to CHS on January 30, 2012. The defendant's collection of child pornography included numerous images and videos depicting prepubescent children engaged in sexual acts, including performing oral sex on an adult male penis or being penetrated by an adult male penis.

15. The defendant's conduct satisfies the elements required to establish a violation of the criminal offense of Transportation of Child Pornography. Specifically, the defendant's conduct establishes:

First, that the defendant knowingly transported or shipped a visual depiction in interstate commerce by any means, including by computer or mails;

Second, that the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct;

Third, that such visual depiction was of a minor engaged in sexually explicit conduct;

Fourth, that the defendant knew that at least one of the performers in such visual depiction was a minor and knew that the visual depiction was of such minor engaged in sexually explicit conduct; and

Fifth, that the visual depiction had been either (a) transported in interstate or foreign commerce, or (b) contains material that had been transported in interstate or foreign commerce by computer or other means.

## DEFENDANT'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have discussed it with my attorney, Carlos Vanegas, Esq. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 10/24/12

_Jorge Rodriguez_
Jorge Rodriguez
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense, and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 10/24/12

_Carlos Vanegas_
Carlos Vanegas, Esq.
Attorney for Defendant Jorge Rodriguez

7